# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Cr. No. 07-006 (RMC)** |
| | : | |
| **JOHN TAYLOR,** | : | |
| | : | |
| **Defendant** | : | |

## SENTENCING MEMORANDUM

On March 2, 2007, Mr. Taylor pled guilty to a one count Information charging him with Theft of Government Property, in violation of 18 U.S.C. § 641. He will appear before this Honorable Court for sentencing on June 8, 2007. Mr. Taylor, through undersigned counsel, respectfully submits the following information for the Court's consideration in determining a fair and just sentence.

## BACKGROUND

On January 8, 2007, a one-count Information was filed charging Mr. Taylor with Theft of Government Property, in violation of 18 U.S.C. § 641. On March 2, 2007, Mr. Taylor appeared before this Court and pled guilty to the one-count Information pursuant to a written plea agreement. Pursuant to the plea agreement, the parties agreed that pursuant to the United States Sentencing Guidelines (hereinafter "guidelines") § 2B1.1(a)(2) and § 2B1.1(b)(1)(G), respectively, the base offense is 6 with a 8 level increase due to the fact that the amount of loss ranged between $70,000 and $120,000. Further the parties agreed that an additional two levels would be added pursuant to guideline § 3B1.1. In addition, the parties agreed to a three-level reduction for acceptance of responsibility, pursuant to § 3E1.1. In sum, the parties agreed that

the total offense level is 13 with no known criminal history; therefore resulting in a guideline range of 12 to 18 months imprisonment within Zone D of the guidelines.

The Pre-Sentence Report (PSR) calculates the guideline range that was contemplated by the parties pursuant to the plea agreement.  Therefore, the PSR indicates that the applicable sentencing guidelines is a range of 12 to 18 months.  See PSR, ¶ 51, pg. 11.  Mr. Taylor does not dispute to this calculation, however, he submits that the factors identified in 18 U.S.C. § 3553(a) support his request that he be given a sentence below the applicable guideline range.

## ARGUMENT

Notwithstanding the agreements stated in the plea agreement, it should be noted, however, that the Guidelines are not mandatory, but merely advisory.  The factors identified in 18 U.S.C. § 3553(a) support Mr. Taylor's request that he be sentenced below the applicable guideline range.   The Court must consider the Guidelines, along with the other factors set forth in 18 U.S.C. § 3553(a).  United States v. Booker, 543 U.S. 220, 260  (2005).  These factors include:   "The nature and circumstances of the offense and the history and characteristics of the defendant; . . . the kinds of sentences available; . . . the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and . . . the need to provide restitution to any victims of the offense."  18 U.S.C. 3553(a).  Pursuant to 18 U.S.C. § 3661,

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing an appropriate sentence.

After considering all of the factors set forth in § 3553(a), the Court must impose a

sentence "that reflect[s] the seriousness of the offense, promote[s] respect for the law, provide[s] just punishment, afford[s] adequate deterrence, protect[s] the public, and effectively provide[s] the defendant with needed educational or vocational training and medical care." Id. at 765 (citing 18 U.S.C. § 3553(a)(2)).  Section 3582 of Title 18 provides:

> [t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, **recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.**  (Emphasis added).

With that limitation and considering all of the purposes of sentencing, the Court must impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph [(a)](2) [of § 3553]."  18 U.S.C. § 3553(a).

A review of all of the applicable factors set forth in § 3553(a) demonstrates that a sentence below the applicable guidelines would be warranted in this matter, and that a sentence of imprisonment within the Guideline range would be greater than necessary to meet the sentencing purposes set forth in § 3553(a)(2).

### I.    Factors of Mr. Taylor that the Court Should Consider under § 3553(a)(1)

#### I.    Nature of the Offense

The crime to which Mr. Taylor pled guilty to is a very serious offense. Over the course of approximately three years, Mr. Taylor unlawfully took approximately $106,000.00 from the Intelligence Contingency Funds, a section of the United States Army Intelligence and Security Command located at Camp Zama, Japan.  Mr. Taylor was responsible for budgeting, disbursing, and accounting of Intelligence Contingency Funds for intelligence agents located throughout the

Pacific and Far East.

In May 2006, an internal audit of the Intelligence and Security Command was about to commence.  At this time, Mr. Taylor admitted to his supervisors that he unlawfully took money from the fund.  On May 25, 2006, Mr. Taylor was placed on administrative leave pending the outcome of an investigation into the missing funds from the Intelligence Contingency Fund.  In June 2006, Mr. Taylor met with F.B.I. agents conducting the investigation of the Intelligence Contingency Fund without the assistance of an attorney or a representative from the U.S. Army.  On June 24, 2006, Mr. Taylor gave a statement to the F.B.I. admitting his involvement in taking money from the Intelligence Contingency Fund.  Despite his confession he was not arrested.

On August 1, 2006, Mr. Taylor received a notice of removal from his position to which he replied on August 10, 2006.[1]  However, on September 18, 2006, Mr. Taylor's request for reconsideration of removal was denied and he was permanently removed from Camp Zama, Japan.  Mr. Taylor then returned to the United States to reside with his brother in Georgia.

There is no dispute that Mr. Taylor has been very remorseful, candid, forthcoming and cooperative regarding his involvement in this case.  Not only did he immediately admit his wrongdoing, he has complied with every request of law enforcement at every stage of this case.  It should also be noted that Mr. Taylor participated in a polygraph examination at the request of the U.S. Army, to which he passed.  Mr. Taylor participated in this examination without the assistance of counsel.

---

[1]  Mr. Taylor's reply is attached to this sentencing memorandum.  This reply was written by Mr. Taylor without the assistance of counsel or guidance from a representative from the U.S. Army at a time when he had no knowledge of a pending criminal case against him.

II.     *Characteristics of the Defendant*

Mr. Taylor is a 48-year-old man who has been a lifelong devotee to federal service.  At the age of eighteen, Mr. Taylor enlisted in the United States Army.  Mr. Taylor was assigned to various military bases across the United States and around the world, such as Kentucky, Indiana, Alaska, Massachusetts, Germany, and Japan.  In November 1988, Mr. Taylor was assigned to Camp Zama, Japan where he remained until September 2006.

After twenty years of active service, Mr. Taylor was honorably discharged as a Staff Sargent in 1996.  He received numerous awards commending him for good service and conduct. In 1997, after his retirement, Mr. Taylor became a civilian employee and was assigned as the Intelligence Contingency Fund Officer in 1998.  He served in that capacity until his removal in September 2006.

Throughout his life, Mr. Taylor has tried to do the right thing–completing high school, serving his country, getting married and becoming a parent.  In 1980, Mr. Taylor married Sonae Spaulding.  They have three children, Corey - 29 years old, Antonio - 25 years old, and Tyrell - 23 years old.  Unfortunately, in 1995, Mr. Taylor and Ms. Spaulding separated at which time Ms. Spaulding left Camp Zama, Japan and returned to the United States with their three children.  His wife and three children have lived in the Jacksonville, Florida area since their departure from Japan.

As evidenced by the attached letters from his family, friends, and co-workers[2],  Mr. Taylor's actions in this case have impacted him in more ways than he could have ever

---

[2]  Please see the attached letters from various family members as well as his former co-workers.  As evidenced in the letters, Mr. Taylor's commitment to serving his country in addition to the remorse he feels for his actions is overwhelming.

anticipated.  For over thirty years, Mr. Taylor spent his life committed to the United States

Army.  The majority of that commitment was spent outside the United States.  Since returning to

the United States in September 2006, it has been difficult for Mr. Taylor to assimilate back into

the cultural norms of residing in the United States after living in Japan for over twenty years.

Mr. Taylor feels that he has lost everything in light of his involvement in the instant offense.  In

his response to his proposed removal from his position in Camp Zama, Japan, he stated the

following:

> "Out of 29 years of federal service, this is the first time I have ever been in any sort of
> trouble with the U.S. Army or any Law Enforcement Agency.  I have been part of the
> 500[th] MI Brigade since 1988 and I have always loved and been loyal to the unit.  **The
> brigade is my family and home and I will make any sacrifice within my power to
> continue to be a part of it.**" [Emphasis added].

### III.    Disparity in Sentencing

Imposing a sentence below the Guideline range would not promote an unwarranted

sentencing disparity.  Disparities arise not only from sentencing determinations by courts, but

from charging decisions made by the government and by individuals' ability or inability to

successfully cooperate with the government.  In this case, Mr. Taylor attempted to provide useful

and helpful information to the F.B.I. about other instances of misuse of government funds at

Camp Zama, Japan.  Unfortunately, this information did not prove to be fruitful to any pending

criminal investigation and as a result Mr. Taylor was not afforded a cooperation plea.

When considering potential disparities and the Guidelines, the Court should also consider

that in 2003, the Sentencing Commission issued a policy statement, contained in U.S.S.G.

§5K3.1, in which the Commission approved of a downward departure of up to 4 levels for

defendants who agreed to plead guilty very early on in the proceedings.  Disparities unrelated to a

defendant's offense or criminal history occur based on the disparate use of this policy statement among United States Attorneys' Offices. Our district does not have such a program, while others do.

The merits of the policy statement in § 5K3.1 are readily apparent. Early dispositions conserve scarce prosecutorial and judicial resources. Section 5K3.1 implements the Sentencing Commission's desire that defendants who agree to plead early on in the proceedings receive additional dispensation. Here, Mr. Taylor admitted his guilt to the investigative agents as soon as he was confronted and indicated his willingness to plead guilty very early on in the proceedings. Mr. Taylor saved scarce prosecutorial and judicial resources by his early decision to cooperate with law enforcement, his agreement to venue in the District of Columbia, and pled guilty in a timely fashion. Therefore, if § 5K3.1 applied in the District of Columbia, it is likely that Mr. Taylor would have received a four level reduction. A four level reduction in the offense level here would reduce the guidelines range from 12 to 18 months, a guideline range in Zone D, to 4 to 10 months, a guideline range in Zone B - thereby resulting in an opportunity to receive a term of probation.

IV.    *Sentencing Mr. Taylor to a Sentence of Incarceration would be Unduly Punitive and would Delay Restitution Payments*

The imposition of a sentence of imprisonment in the instant case would serve no purpose other than punishment. A sentence of imprisonment on him would prove more detrimental to his character than rehabilitative or instructive. Punishment is indeed one of the purposes of sentencing, but the toll the instant case has taken on his spirits and his family, and the fact that, in any case, conditions will be imposed and his liberty restricted certainly serve - in Mr. Taylor's case - as adequate punishment. Also, Mr. Taylor's record is now permanently stamped with a

felony conviction that will never be expunged.  Further, he is precluded from obtaining any

employment with the federal government for a period of three years from the date of sentencing -

a job in which he had held for over half of his life.

Further, the Court should consider the sum of restitution in this case - approximately

$106,000.00.  If Mr. Taylor is given a term of incarceration he will be unable to provide

restitution to the United States government in a timely fashion - if at all.  The need to provide

restitution to the United States government shall be considered by this Court pursuant to § 3553

(a)(7) in determining an appropriate sentence for Mr. Taylor.

### <u>CONCLUSION</u>

For all of the foregoing reasons and such other reasons that may be discussed at the

sentencing hearing in this matter, Mr. Taylor respectfully submits sentencing him to a term of

probation[3] is "sufficient, but not greater than necessary to reflect the seriousness of the offense,

promote respect for the law, provide just punishment, afford adequate deterrence, protect the

public, or effectively provide Mr. Taylor with needed educational or vocational training and

medical care."  <u>See</u> 18 U.S.C. § 3553(a).  Further, a sentence of probation is adequate to promote

the relevant sentencing objectives at issue in this case.

---

[3] If the Court is of the belief that a straight term of probation is inadequate to meet the
sentencing objectives of § 3553(a), the Court should consider sentencing Mr. Taylor to a term of
home detention as a special condition of his probation.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER


_____/s/_____
Dani Jahn
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500

# Exhibit

**DEPARTMENT OF THE ARMY**
500TH MILITARY INTELLIGENCE BRIGADE
441ST MILITARY INTELLIGENCE BATTALION
UNIT 45009
APO AP 96338-5009

IAPD-JA-RMO                                    10 August 2006

MEMORANDUM THRU COMMANDER, 441ST MILITARY INTELLIGENCE
BATTALION, APO AP 96338-5009

FOR COMMANDER, 500TH MILITARY INTELLIGENCE BRIGADE, SCHOFIELD
BARRACKS, HI 96857-5300

SUBJECT: Request Consideration of Proposed Removal

1. Sir, I would like to thank you for giving me this opportunity to respond concerning your
notice of proposed removal.

2. Words alone cannot express how deeply I regret the shame I have brought upon the
500th MI Brigade, INSCOM, and myself. Please accept my deepest and most sincere
apology.

3. I committed an act of gross negligence, and I am ashamed of the discredit and
disappointment I have brought upon myself, and those who entrusted in me. I am truly
sorry. Regardless what excuses I gave for what I did, I was wrong. I know I committed a
serious crime, but I'm not a criminal, nor a person who lack integrity. It was out of
stupidity, and I am deeply remorseful for what I did.

4. Out of 29 years of federal service, this is the first time I have ever been in any sort of
trouble with the U.S. Army or any Law Enforcement Agency. I have been part of the 500th
MI Brigade since 1988 and I have always loved and been loyal to the unit. The brigade is
my family and home and I will make any sacrifice within my power to continue to be a part
of it.

5. I am aware that asking for a second chance is probably out of the question, but if given
that opportunity I know I can rehabilitate. I have the potential and skills to perform in
many areas within the unit. I am pleading for your forgiveness and a chance to redeem
myself as a member of this brigade.

6. Upon making your final decision, I am asking for your consideration on the following.

    a. Be given a second chance to rehabilitate and began to rectify this problem.

IAPD-JA-RMO
SUBJECT: Request Consideration of Proposed Removal

b. Start replacing some of the funds by allotment from my entire army retirement pension (This also applies to all paragraphs listed below).

c. If your decision is to have me remove, be given the opportunity to resign.

d. If I am given a second chance, work out a payment plan from my civil service salary, in addition to my retirement pension to began replacing some of the funds.

e. Work extra hours whenever and wherever I am instructed to do so at no cost to the Army.

7. If I am given a second chance, I give you my solemn word I will not let you are the command down. Thank you again for this opportunity to reply.

JOHN W. TAYLOR
DAC

# Attachment

Thomas Taylor                                                                    May 16, 2007
7112 Affirm Lane
Columbus, GA 31909

Honorable Rosemary M. Collyer
United States District Judge
333 Constitution Avenue, N. W.
Washington, D. C. 20001

The purpose of this letter is to provide a character reference for my brother, Mr. John W.
Taylor. I am very close to my brother and believe this puts me in a position to provide
you with a pretty accurate assessment of his character. I felt honored when my brother
John Taylor asked me to write a reference letter for him.

In addition to raising a family and being a good brother, John always found time to get
involved in life around him. Unlike many people these days, whenever he adopts a cause
or pursues a new interest he is guaranteed to be highly committed. It has been said that
great leaders build their lives upon simple principles. I am well aware of the principles on
which he has built his life: honesty, truth, courage, and integrity. No gossip. No petty
talk. No criticism of a friend, family member or colleague. Principles before
personalities. I as well John knew he made a mistake, however he stood firm a took
responsibility for his mistake. John has never been a coward; he has always-live life full
out. It is not his nature to feel shame, or regrets about the past. The situation he is facing
he truly have regrets about it.

John entire career as been spent as a public servant. He is a retired veteran with 20 years
of active service with the Army and over 10 years as civil servant with the Federal
Government. John is also a problem solver. Much thought goes into the things John does,
and he has an unusual ability to notice what others overlook.

John is like a tree-a mighty oak. As the Psalmist described, "He did not follow the advice
of the wicked or take the sinners path or sit with scoffers". John stands for so many of us,
"like a tree, planted by streams of water with leaves that do not wither." We have tasted
his fruit. We have sat in his shade and even been protected by his presence.

I hope that sharing my observations of my brother John will assist you in making the
appropriate decision in his case.

Thank you for your consideration,

*Thomas W. Taylor*

Thomas W. Taylor
First Sergeant, E-8 (Ret)
United State Army

Sharon Thompson-Taylor                                    May 25, 2007
7112 Affirm Lane
Columbus, GA 31909

Honorable Rosemary M. Collyer
United States District Judge
333 Constitution Avenue, N. W.
Washington, D. C. 20001

I'm very pleased to write a character reference for my brother-in-law John Taylor. I have known John for several years. During that time I have always been amazed at his level of enthusiasm. John while station in Japan would call each family member almost monthly to talk and see how things were going with him or her. He is truly a family oriented person. I've also found that many of those who make the most noise draw the biggest crowd. That's not the case with John, because of his character and integrity he always sets the example for other to follow.

John have taught his children to make sure that the things that you do in the dark will always be able to stand up in the glare of daylight. He understands that he is the victor when he turns his back on folly. As a friend, John is loyal, honest, considerate, and supportive, he also has the ability to see and understand things from another person's perspective. He is extremely diplomatic and knows how to raise and discuss common living issues and problems in a non-threatening manner. He is very tuned into how another person might "feel" in a given situation.

John also demonstrates empathy and compassion for the less fortunate. He makes a special effort to help children whenever it is possible. I feel these attributes demonstrate someone with an exceptional character. John is definitely a person with high integrity. When he speaks, his yes is yes and his no is no. He keeps his word even if it hurts him. He is careful about making commitments because he keeps them all.

John is always determined in seeking to achieve goals that he set, compared to someone who is easily discouraged. He has always think well of people, even if he disagree or dislike things he or she does. John when dealing with other people, he always seeks a solution in which you both win something. To tell the truth, I really can't think of anything of consequence on the negative side of the ledger when it comes to John. All in all, I would say that John is a fine, well-balanced person with an abundance of positive qualities.

I feel these attributes demonstrate someone with an exceptional character. I truly hope this will assist you in making your decision.

Sincerely,

MEMORANDUM FOR Honorable Rosemary Collyer, United States District Judge, 333,     26 May 2007
Constitution Avenue, N.W., Washington, D.C. 2001

SUBJECT:  Character Witness Memorandum for John W. Taylor

1.  Your Honor, my name is Jimmy L. Blackmon.  I am a friend of, and have been so since meeting John
Taylor in 1987.  We were both stationed at Camp Zama with the 500th Military Intelligence Brigade as service
members.  I was his supervisor from 1987 to 1989.  I found Mr. Taylor to be a well like individual by all those who
knew him during that time. He never hesitated to provide a helping hand to anyone that needed it.   He was a
great mentor for all.    One thing that comes to mind about him, was that during the Christmas holidays during
that year, Mr. Taylor, as a young SGT E-5, with a family of his own, started a program on his own, to provide
food baskets for single soldier parents and soldiers. The organization was a very cohesive unit.  Everybody loved
him.  Mr. Taylor had numerous social unit gatherings at his base quarters, footing the bill for food and enter-
tainment provided, and never, to my knowledge, asking anyone for a dime.  It was also during this time the he
and I really became the best of friends.  I left Japan in 1989 to return to the states for my last assignment as a
soldier.  Mr. Taylor and I stayed in contract during that time.  I returned to Japan in May of 1992, to get married
to a local Japanese woman, but through some unforeseen events, did not do so.  As I did not have a place to
stay, since I was no longer in the service, Mr. Taylor went out of his way to ensure that I was given a temporary
place to stay until I got a job.  He was instrumental in helping me get into government service by being a
character reference for me.

2.   It was also during this time that I found out, that Mr. Taylor being the good person that he is, was providing
food and help for several Africans living here in Japan.  I was introduced to these individuals by him and became
friends with them also.  When Mr. Taylor retired from the service, he did not return to the U.S., but stayed in
Japan with me, as I had moved into my own apartment off-base, and thereby provided a place for him to stay
until he was able to start work with the government here.  Mr. Taylor took it up on himself to seek employment
on the Japanese economy, as there was a six month rule in place that did not allow retired military personnel
to go directly into another government job.  Mr. Taylor moved on base when he was hired to work for the 500th.
We continued to see each other on a daily basis, as my office was only a ten minute walk from his.  I am aware
of his current situation, as I was called in and questioned concerning charges against him.  I think that what he
has done is wrong, considering the position of trust he was given with his employment, and I realize that some
sort of punishment must be imposed.  Through all of this though, John Taylor is a good man, is still, and will
always be, a very, very good friend of mine.  I respectfully ask your honor, that you take my testimony into
consideration in making your final decision as to his case.

vr

*Jimy L. Blackmon*

JIMMY L. BLACKMON
GS-12, FOB-J
Admin Officer, Camp Zama, Japan

May 24, 2007

Memorandum For Honorable Rosemary M. Collyer, United States District Judge,
333 Constitution Avenue, N.W., Washington, D.C 20001

Subject: Mr. John Taylor

I, Sandy L. Murray, have known Mr. John Taylor for 14 years. Mr. Taylor and I met in
1993, at Camp Zama, Japan while serving as soldiers in the United States Army. Mr.
Taylor and I became very close friends as we both served our respected organizations, and
the Camp Zama community. Since our days in the Untied States Army, we have
maintained a very close friendship and mutual respect for each other.

I can confirm that Mr. Taylor is a man of great integrity and is extremely dedicated to his
family, friends and his work. He is a man of high ethical and moral standards, and has
exhibited nothing but honesty, integrity, trustworthiness and respect towards his profession
and towards others. He is highly respected by all who know him, and he is a kind, gentle
and peace-loving person.

Furthermore, what I admire most about Mr. Taylor is his ability to care for other people,
especially his family. He was very happy and pleased when my wife, Mami Murray, and I
ask him to be the God Father of our two children, and we are very happy and pleased that
he treats our children as if they were his own. My family and I truly feel that he is not only
our friend but an important member of our family as well.

For your information, I have successfully completed 20 years of military service. Have
serve three years as a Department of Defense Police Officer, and is currently working as a
United States Postal Employee. My experience and background has afforded me the ability
and opportunity on many occasions to provide credible judgments on ones credibility and
character, and I truly believe that anything less than complete honesty, integrity and
trustworthiness are out of character for Mr. John Taylor.

Yours faithfully,

Sandy L. Murray

Mami Murray

2533 Ala Wai Blvd Apt 1002
Honolulu, HI 96815
808-232-8271

10108 Welshire Drive
Upper Marlboro, MD  20772

May 25, 2007

Honorable Rosemary M. Collyer
United States District Judge
333 Constitution Avenue, N.W.
Washington, D.C. 20001

Dear Judge Collyer,

My name is George W. Taylor, Jr. I am the Audit Manager for the Quality Assurance
Unit of the Metropolitan Police Department in Washington, D.C.  My unit conducts audit
and inspections to prevent fraud, waste and abuse in the MPD.

John Willie Taylor is the youngest of my six siblings. I have known him all his life. I
have watched him grow from a baby to an adult and have always been impressed with his
intelligence and his deep feelings and thoughtfulness in dealing with friends and people
in general.

He has always been unselfish, unimpressed with material things and has a great love for
people.  As a child he often shared or gave away his lunch, toys or clothing to others he
felt were in greater need. I often chided him for this but secretly admired him for it.  He
remains a very selfless, giving and caring individual. He has always been likable and
popular. People like him because he cares about them and about what they think.  When
he visits me in Upper Marlboro, MD he is unimpressed with the fancy cars and big house
in the neighborhood but is deeply moved by the number of wild animals that are road kill
victims on the back roads of Upper Marlboro and the homeless people he encounters on
the streets of Washington, D.C. He could be a great benefit to the community working
with a program that addresses issues such as homeless people or neglected animals.

John Willie takes great pride in his Army service record. He, our brother Thomas and
brother-in law Moses Armstrong, all retired now, were sergeants in the Army. When we
gathered for family functions or during holidays they exuded pride as the shared their
Army experience and accomplishments.  He enjoyed his work in the "Security" field and
continued to serve in that area for the Department of Defense after retiring from the
Army.

In discussions with me, my brother John Willie has expressed great remorse for his
actions that led to the Theft of Government Property conviction. I know him to be sincere
in his expression of remorse. He is aware that his actions and conviction leaves a
permanent stain on his years of service. He is also deeply sadden that his actions

eliminates the opportunity to continue pursuing a career in the area he loved, in which he had gained many years of experience in the Army and the civilian sector.

I could never condone or minimize my brother's actions. However, I respect his overall record of service and love for this country. I sincerely believe he is an honest, sincere and trustworthy man. I think he has learned a valuable lesson and under gone countless hours of introspection. He has been both humbled and inspired by the love and support he has received from friends and family. The strength of his character will not allow John Willie to commit a similar offense, ever again.

Thank you for allowing me to present this letter on behalf of my brother John Willie Taylor. Prior to this Theft of Government Property conviction he served as a role model for the youth in the extended Taylor family. I love and respect him very much and will help him as much as I can to succeed with his future.

Respectfully,

George William Taylor, Jr.

Sergeant Major Herman Johnson
2803 O'Connor Court
Fredericksburg, VA  22408

May 27, 2007

Honorable Rosemary M. Collyer
United States District Judge
333 Constitution Avenue N.W.
Washington, D.C.  20001

Dear Judge Collyer:

I have known John Taylor for more than 22 years.  During this time I have known him to be
nothing more than a loyal and true friend to me as well to my family.  When I first met him, he
was a strong and committed Non-Commissioned Officer serving in the United States Army.  His
mission, his Soldiers, and his family, were always at the forefront of his daily life.

His leadership and his professionalism, two of the main reasons that the units in which he served
with were always successful in accomplishing their missions.  His home was always open to
anyone that needed that special home feeling while we were stationed in the 41st Postal
Detachment in Pirmasens Germany. I recall him volunteering his time to work extra hours
during several Christmas Seasons in Germany ensuring that many Soldiers and their families
received their mail before Christmas and other Soldiers could go home and spend time with their
families and loved ones.  This was a true example of sacrifice that I witnessed as a young Soldier
set by a more seasoned Soldier.

In my opinion, the situation that he is currently in does not reflect the true character of John
Taylor.  In life, we all sometimes make some decisions that we truly regret, but as we look back
at them we know that we would definitely not make that same choice again.  This is the case
with John. He is aware of the poor choice that he made, and I know that he would never make
that same choice again.

John has, and will always be a true friend to me and my family.

Sincerely,

Sergeant Major Herman Johnson
United States Army

Sonja Johnson
2803 O'Connor Court
Fredericksburg, VA  22408

May 27, 2007

Honorable Rosemary M. Collyer
United States District Judge
333 Constitution Avenue N.W.
Washington, D.C.  20001

Dear Judge Collyer:

I had the pleasure to meet John Taylor while assigned to 41st Postal Detachment in Pirmasens, Germany.  John Taylor was my supervisor and mentor.  John was the Operations Sergeant of the post office.  John's leadership exemplified a total professional workforce.  His soldiers and the command team respected him at the highest level.

John Taylor's home was opened to all soldiers in the community.  John Taylor was a provider for his family and his mother-in-law.  John Taylor loaned his car to soldiers that didn't have transportation but needed to transport groceries or their family to the Post Exchange. Since, I met John in Germany and throughout the twenty-years of friendship; he has always had a caring heart.  Still today, I know if I ever needed anything I can count on him to be there for me and my family.  He has always provided straight information to my family and I appreciate that characteristic.

In my opinion, John Taylor would not commit this sort of offense again. Unfortunately, in life we face so many challenges during stressful situations and at times we are not thinking clearly.  I can reflect back to his leadership in running a very tight operation at the 41st Postal Detachment where he was very clear about illegal actions would be reported to the command team.  I trust him and again feel that this offense would not occur again.

John has mentioned that everything in life has a divine purpose and through God's grace and mercy this to shall pass.  Each day is a new day for him and he can only take one day at a time.  My family and I love him and will always be available for him just as he is for us.  We will get through this challenge as we continue to look towards the Lord.

Sincerely,

Sonja Johnson