```
                IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,       )
                                )
          v.                    )    Criminal No.  CR-07-006 (RMC)
                                )
JOHN TAYLOR,                    )    Count One: 18 U.S.C. § 641
                                )    (Theft of Public Funds)
          Defendant.            )
_____)
```

**SENTENCING MEMORANDUM**

The United States of America, appearing by and through undersigned counsel, respectfully submits the following sentencing memorandum:

**I.   Introduction**

On March 2, 2007, defendant John Taylor entered a plea of guilty to a one count Information charging him with theft of government property, in violation of 18 U.S.C. § 641. Sentencing is set for June 8, 2007. For the reasons set forth below, this Court should sentence the defendant to a term of incarceration in the middle of the applicable range under the United States Sentencing Guidelines and should order restitution in the amount of $106,226.56. The defendant used his public office to steal money entrusted to his care. He embezzled over $100,000, and he

falsified and destroyed documents to cover his tracks. Inasmuch as he is eligible to receive a three-level Guidelines reduction for acceptance of responsibility, which the Government does not oppose, the defendant does not qualify for, and should not receive, any further downward departure or a non-Guidelines sentence.

**II.  Facts**

Until May 2006, the defendant was a civilian employee of the Department of Defense (DOD). Stationed at Camp Zama, Japan, he served as an Intelligence Contingency Fund Class A agent. In this position, the defendant was responsible for providing DOD funds to intelligence agents, who used the funds for classified intelligence-gathering activity. His position was a sensitive one, and it entailed the use of care and discretion. The defendant was charged with accurately disbursing, managing, and accounting for hundreds of thousands of dollars meant for vital DOD activities. Intelligence Contingency Funds (ICF) are designated for emergency and extraordinary expenses, and they are appropriated from the U.S. Treasury only upon the Secretary of the Army's certification of the necessity of worldwide intelligence activities. These funds are authorized for intelligence-related activity only, and strict controls are placed on their use.

The defendant's position required him to manage classified

bank accounts and supervise agents involved in clandestine and classified activities. But rather than fulfill the responsibilities of his office, the defendant chose to subvert them. From approximately January 2003 through January 2006, on approximately 30 separate occasions, the defendant stole the very funds he was charged with managing. As detailed in the U.S. Army Intelligence and Security Command report attached to this memorandum as Exhibit A, the defendant's embezzlement caused a loss to the government of $106,226.56.

The defendant also attempted to hide his actions, so that any audit or investigation would not reveal the extent of his theft. He falsified DOD forms. He destroyed ICF documents and records, in an attempt to hide the fact that cash was missing.

Specifically, the defendant created false accounting vouchers, making it seem that he had disbursed funds to an agent, when in fact he had withdrawn the funds from the ICF bank account or cashbox and kept it himself. The defendant would also withdraw funds, disburse only a portion, and create false accounting records indicating he had disbursed the full amount. And the defendant would accept unused funds from an agent, convert them to his own use, and fail to record the return, so that the records would still indicate the agent was liable for the money. These methods were particularly damaging because they not only concealed the defendant's role in the theft but also attempted to shift blame on to innocent agents who had no idea of

the defendant's acts.

The three events cited in paragraphs eight through ten of the Factual Basis for Plea are merely examples of the ways in which the defendant stole DOD funds.  Rather than safeguard the Intelligence Contingency Funds he was charged with managing, he used them as his own bank account.  He turned a government cashbox into his personal ATM.

**III. Applicable Law**

As the defendant notes in his memorandum (Defendant's Sentencing Memorandum ("Def. Mem.") at 2), the U.S. Sentencing Guidelines were rendered advisory by the Supreme Court's decision in United States v. Booker, 543 U.S. 220, 245-46 (2005). However, sentencing courts must still take account of the Guidelines.  Id. at 259.  Appellate courts now review sentences for reasonableness, and a sentencing court "acts unreasonably" if it does not consider the Guidelines.  United States v. Bras, 483 F.3d 103, 106 (D.C. Cir. 2007).  Moreover, although a defendant may challenge the length of a sentence as unreasonable, "a sentence within a properly calculated Guidelines range is entitled to a rebuttable presumption of reasonableness."  Id. (quoting United States v. Dorcely, 454 F.3d 366, 376 (D.C. Cir. 2006) (internal quotations omitted)).

Once the defendant's Guideline range has been properly calculated, a sentencing court must then consult the factors

listed in 18 U.S.C. § 3553(a).  Among these factors are the "nature and circumstance of the offense and the history and characteristics of the defendant"; the "need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; [and] to provide just punishment for the offense"; the "kinds of sentences available"; and the defendant's Guidelines range.  Id.

**IV. Analysis**

In this case, a Guidelines sentence, which is presumptively reasonable under Booker, is an appropriate one.  After considering the factors set forth in § 3553(a), this Court should sentence the defendant to a term of imprisonment in the middle of the Guidelines range and deny the defendant's request for probation.

As an initial matter, it is clear that the defendant is not asking for a departure under the Guidelines calculation, but rather for a Booker "variance" or a non-Guidelines sentence. Although the defendant asks this Court to consider U.S.S.G. §5K1.3, this provision is inapplicable: no such program exists in the District of Columbia, and the provision requires the motion of the government.  Def. Mem. at 8.  In addition, as noted in the plea agreement, the parties "agree to recommend that no adjustment to the guideline level other than those discussed in

this agreement is appropriate." Plea Agr., p. 3, para. 7.

Nor does the defendant object to the Guideline range as calculated by the plea agreement or the Probation office. With a total offense level of 13 — based on a base offense level of six, plus eight levels for the loss amount (under U.S.S.G. §2B1.1), plus two levels for an abuse of a position of trust (under §3B1.3)[1], and subtracting three points for acceptance of responsibility — the defendant faces a Guidelines range of 12-18 months.

Instead, the defendant sets forth four arguments why a term of probation is appropriate. None are availing. First, he argues that he has been "very remorseful, candid, forthcoming and cooperative." Def. Mem. at 4. While the defendant has admitted his conduct, his admissions and assistance have already been factored into his Guidelines calculation. The defendant will receive two points for acceptance of responsibility under U.S.S.G. §3E1.1(a), and, if he continues to demonstrate a full acceptance of responsibility, the government will move at sentencing for a further one level reduction under §3E1.1(b). No additional sentence reduction is warranted.[2]

---

[1] The defendant states that two points are applicable under U.S.S.G. §3B1.1 (Aggravating Role in the Offense), but the relevant provision is actually U.S.S.G. §3B1.3 (Abuse of Position of Trust).

[2] It should also be noted that the defendant was only forthcoming and cooperative after being confronted with evidence

The defendant also argues that he has been an otherwise lawful public servant who "[t]hroughout his life" has "tried to do the right thing." Def. Mem. at 5. The government does not dispute or denigrate the defendant's service. However, this service should not excuse a crime that was lengthy, deliberate, cast suspicions on the innocent, and sapped vital intelligence funds. Rather, the defendant capitalized on his position of trust. He took advantage of a position afforded him because of his prior service, and his Guidelines range has been appropriately enhanced under U.S.S.G. §3B1.3 because he abused that position of trust to steal funds that he managed.

The defendant next argues that a non-Guidelines sentence would not promote unwarranted disparity. This contention fails because the Guidelines were specifically designed to reduce unwarranted disparity. See U.S.S.G. §1A1.1 n.3 (noting that the three purposes of the Sentencing Reform Act, which created the Guidelines, were to promote honesty, uniformity, and proportionality). To avoid unwarranted sentence disparity, as required by § 3553(a)(6), this Court should not impose a non-Guidelines sentence, but rather a Guidelines sentence, which the D.C. Circuit has held is presumptively reasonable under Booker. See Bras, 483 F.3d 103 at 106.

---

of his embezzlement by auditors from the U.S. Army Intelligence and Security Command.

Taylor's final argument is that a sentence of imprisonment "would serve no purpose other than punishment." Def. Mem. at 7. This argument overlooks § 3553(a)(2), which reaffirms that just punishment is an essential element of every sentencing: courts "shall consider . . . the need for the sentence imposed — to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." Although the defendant admits that punishment is one of the purposes of sentencing, he maintains that he has already received adequate punishment. Def. Mem. at 7. Yet the collateral consequences of a felony conviction are secondary to selecting a sentence that accurately gauges the nature of the offense and the defendant's role in the conduct.

The seriousness of the offense is a crucial factor in the § 3553(a) analysis, and it is difficult to imagine a more serious theft of government property than stealing Defense Department funds intended to support classified intelligence-gathering activities. A sentence of probation, which would require an effective departure of at least three Guideline levels, would not adequately reflect the nature of the defendant's conduct, nor would it promote respect for the law or afford adequate deterrence.

**V.  Conclusion**

For the above reasons, the government respectfully submits that this Court should deny the defendant's request for a non-Guidelines sentence.  The defendant should receive a sentence of incarceration in the middle of the applicable Guidelines range, and the Court should order restitution in the amount of $106,226.56.

DATED: June 7, 2007, at Washington, DC.

                                    WILLIAM M. WELCH II
                                    Chief, Public Integrity Section

                    By:  /s/ John P. Pearson
                         JOHN P. PEARSON
                         Trial Attorney
                         U.S. Department of Justice
                         Criminal Division
                         Public Integrity Section
                         1400 New York Ave., NW
                         Washington, DC 20005
                         (202) 514-1412
                         John.Pearson@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on May 30, 2007, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Dani Jahn, Counsel for the Defendant.

*s/ John P. Pearson*
JOHN P. PEARSON
Trial Attorney
Public Integrity Section
Criminal Division
U.S. Department of Justice



**DEPARTMENT OF THE ARMY**
UNITED STATES ARMY INTELLIGENCE AND SECURITY COMMAND
8825 BEULAH STREET
FORT BELVOIR, VIRGINIA 22060-5246

IAIR

6 Sep 2006

MEMORANDUM FOR Special Agent in Charge, Northwest Fraud Resident Agency, Major Procurement Fraud Unit, U.S. Army Criminal Investigation Command, 33400 9th Avenue, Suite 214, Federal Way, WA 98003

SUBJECT: Intelligence Contingency Funds, 500th Military Intelligence Brigade, Audit Report: IAIR-08-2006

1. This is the report on our review of the Intelligence Contingency Fund at the 500th Military Intelligence Brigade that you requested.

2. The review indicated that John W. Taylor, Intelligence Contingency Fund Class A agent, 500th Military Intelligence Brigade, could not account for $106,226.56 of government funds in his charge. We found that he had not accounted for cash that was returned to him by agents, fabricated DD Forms 1081, and destroyed Intelligence Contingency Fund documents and records to hide the fact that cash was missing from his accountability. We determined he destroyed documents to impede an unannounced management control review and subsequent Class B agent inspection, to potentially gain more time to prepare his records for inspection and hide the loss of funds.

3. If you have any questions, please contact David Elliott at (703) 706-1666, dave.elliott@us.army.mil.

Encl

DARELL G. LANCE
Chief of Staff



**DEPARTMENT OF THE ARMY**
UNITED STATES ARMY INTELLIGENCE AND SECURITY COMMAND
8825 BEULAH STREET
FORT BELVOIR, VIRGINIA 22060-5246

IAIR                                                                                            5 SEP 2006

SUBJECT: Intelligence Contingency Funds, 500th Military Intelligence Brigade, Special Report: IAIR-08-2006

1. Introduction. I conducted a review of the 500th Military Intelligence Brigade's Intelligence Contingency Fund Program, from 22 May 2006 to 28 July 2006, as requested by the Assistant Chief of Staff, Resource Management and approved by the Chief of Staff, U.S. Army Intelligence and Security Command. During the review I notified the Japan Resident Agency CID at Camp Zama Japan that John W. Taylor, 500th Military Intelligence Brigade Intelligence Contingency Fund Class A agent, could not fully account for his cash advance from Steven F. Breyfogle, U.S. Army Intelligence and Security Command's Intelligence Contingency Fund Class B agent. On 26 May 2006, the Japan Resident Agency CID at Camp Zama Japan notified us that special agents from the Major Procurement Fraud Unit would probably perform the investigation of the missing funds and asked that I continue my review, specifically to identify any evidence of criminal acts related to the missing Intelligence Contingency Fund cash.

2. Background. I assisted special agents from the Major Procurement Fraud Unit and the Federal Bureau of Investigation in developing and documenting evidence of fraud and embezzlement. During the investigation I identified where John Taylor, Intelligence Contingency Fund Class A agent at the 500th Military Intelligence Brigade, fabricated DD Forms 1081, and destroyed Intelligence Contingency Fund documents and records to hide $106, 226.56, which was missing from his accountability.

Army Regulation 381-141, *Intelligence Contingency Funds* establishes uniform procedures for the use, administration, supervision, and control of Intelligence Contingency Funds. These funds are part of the Operation and Maintenance, Army appropriation and are a portion of the Secretary of the Army Emergency and Extraordinary Expense funds (designated as Limitation .0017). Authorization for Intelligence Contingency Fund is granted in annual appropriation acts in language similar to the following: "For emergency and extraordinary expenses to be expended on the approval or authority of the SA." Payments may be made on the Secretary of the Army's certification of necessity of worldwide intelligence activities. The DCS, G-2, as the Army's senior intelligence officer, together with the Army General Counsel and The Inspector General, is responsible for intelligence oversight for the U.S. Army. The cash that is used to support Intelligence Contingency Fund Operations is U.S. government funds from the U.S. Treasury, which is advanced by

IAIR
SUBJECT: Intelligence Contingency Funds, 500th Military Intelligence Brigade, Special Report: IAIR-08-2006

Joseph A. Myrda, Disbursing Officer, Central Disbursing Office, Disbursing Station Symbol Number 5570, Defense Finance and Accounting Service - Indianapolis, through Steven F. Breyfogle, Intelligence Contingency Fund Class B Agent, U.S. Army Intelligence and Security Command, to Intelligence Contingency Fund Class A agents and custodians at major subordinate commands and supported Task Forces.

3. Objective, Scope, and Methodology. My objectives were to validate the reconstruction of the Intelligence Contingency Fund records and supporting documentation; evaluate the propriety of use of Intelligence Contingency Fund in view of each unit's mission, to include an examination of the various Intelligence Contingency Fund accounting records and the accuracy of account balances. The specific objectives were to:

- Validate the reconstruction of Intelligence Contingency Fund files and account ledgers.
- Verify the accountability of the Intelligence Contingency Fund account.
- Determine if the command properly managed Intelligence Contingency Fund cash.
- Assess the Management Controls of the Intelligence Contingency Fund account.

I conducted the fieldwork from 22 May 2006 to 28 July 2006 in accordance with generally accepted government auditing standards and the Department of the Army Internal Review Evaluator Standards, with one exception. The person that performed the review, David Elliott, Chief, Internal Review Office, worked as the Alternate Intelligence Contingency Fund Class B agent from 18 December 2000 to September 2002.

I reviewed FY 2004 through 2006 Intelligence Contingency Fund files, documents and emails, which related to the management and expenditure of Intelligence Contingency Fund at both the U.S. Army Intelligence and Security Command's Assistant Chief of Staff, Resource Management, Fort Belvoir, Virginia and at the 500th Military Intelligence Brigade's Intelligence Contingency Fund Office, Camp Zama, Japan.

To validate the reconstruction of Intelligence Contingency Fund files and account ledgers and to verify the accountability of the Intelligence Contingency Fund

2

IAIR
SUBJECT: Intelligence Contingency Funds, 500th Military Intelligence Brigade, Special Report: IAIR-08-2006

account, I reviewed the following Intelligence Contingency Fund documents on file at the 500th Military Intelligence Brigade's Intelligence Contingency Fund Office, for FY 2004 through FY 2006, for adequate completeness:

- DD Forms 281 and 281a (Vouchers for Emergency or Extraordinary Expense Expenditures);
- DD Forms 634, (Receipt for Miscellaneous Collections);
- DD Forms 1081 (Statements of Agent Officer's Account);
- DA Forms 703 (Intelligence Contingency Fund Cash Blotters);
- DA Forms 2362-R (Subsidiary Cash Ledgers); and
- DA Forms 3697-R (Subvouchers for Disbursement from Confidential Funds).

I also reviewed the Intelligence Contingency Fund records to determine if the post reference files and the account access register were maintained; regulations, instructions, and other guidance were on hand or available; and operational plans, files, and reports were available.

To determine if the 500th Military Intelligence Brigade properly managed Intelligence Contingency Fund cash, I reviewed the management and storage of cash, negotiable instruments and disbursement vouchers, checking account approval, proper reconciliation of bank statements, foreign currency maintenance, and any performance of audits and inspections.

To assess the Management Control of the Intelligence Contingency Fund account, I reviewed Intelligence Contingency Fund files, management control files and annual assurance statements submitted for FY2004 through FY 2006.

4. Results. During my review of Statements of Agents Officer's Account (DD Forms 1081), I found that there were DD Forms 1081 for cash returns that had not been properly completed, processed, and posted to the Cash Blotter. The review indicated that the balance of the Cash Advances sub ledger should have been $68,420.45. The Intelligence Contingency Fund Files contained supporting documentation for only $27,214.75 of these advances. The Class A agent could not account for cash advances worth $41,205.70. In the review of DD Forms 1081 at the 500th Military Intelligence Brigade, I found the following irregularities:

*Cash Return not Processed.* During the review I identified that the following DD Forms 1081, which documented the return of cash to John Taylor, Intelligence Contingency Fund Class A agent. John Taylor never posted these cash returns to the Intelligence Contingency Fund Cash Blotter. On 24 June 2006, John Taylor

3

IAIR
SUBJECT: Intelligence Contingency Funds, 500th Military Intelligence Brigade, Special Report: IAIR-08-2006

verbally confirmed to me that the cash was returned by the listed agents and that he never posted the DD Forms 1081 to the blotter.

  Benson, Eric B. – returned $748.00 on 30 June 2005
  Condon, Corey M. – returned $500.00 on 30 June 2005
  Easley, Bruce E. – returned $879.28 on 28 March 2006
  Green, Gregory W. – returned $1,000.00 on 11 June 2001
  Harkins, Ellis X. – returned $840.40 on 21 August 2002
  McKinney, Christopher L. – returned $286.93 on 30 June 2005
  Voigt, Kurt R. – returned $3,525.28 on 30 March 2005

*Cash Advance Incorrectly Posted.* During the review I identified that the following DD Forms 1081 were incorrectly posted to the Intelligence Contingency Fund Cash Blotter. On 24 June 2006, John Taylor verbally confirmed to me that the DD Forms 1081 were incorrectly posted to the blotter.

  Wellman, Donald L. – $1,957.03 posted as $3,121.77, PR 04-115, 31 March 2004
  Turner, David L. – $5,000.00 posted as $10,000.00, PR 04-119, 5 April 2004
  McKinney, Christopher L. – $150.00 posted as $1,300.00, PR 04-122, 28 April 2005
  Ishimaru, Katsuya K. – $4,948.00 posted as $5,448.00, PR 05-186, 29 July 2005

*Blotter entry not supported by DD Form 1081.* During the review I identified that the following blotter entries were not properly supported by DD Forms 1081; a copy of the supporting document could not be found in either the posting reference file or claimants record. On 24 June 2006, John Taylor told me that the money was never advanced.

  Ishimaru, Katsuya K. – Advance of $4,265.66, PR 04-117, 31 March 2004
  Bogus, Tiffany E. – Advance of $4,508.97, PR 04-118, 2 April 2004
  Benat, Scott M. – Advance of $3,000.00, PR 04-120, on 15 April 2004
  Hart, Brian P. – Advance of $6,500.00, PR 04-121, 27 April 2004
  Kunkel, Barry P. – Advance of $5,681.65, PR 04-123, on 28 April 2004

*Unverified Advances.* On 24 June 2006, John Taylor told me that money was returned against the following advances and that the advances should reflect a zero balance.

  Bacasen, Catherine P. – Ending balance of $421.91 on 28 May 2006
  Klahr, Runnel – Ending balance of $474.08 on 9 January 2004
  Martinez, Gabriel M. – Ending balance of $900.00 on 14 January 2005
  Morrison, David W. – Ending balance of $33.83 on 14 August 2003
  Story, Jonathan. – Ending balance of $138.15 on 17 May 2006

IAIR
SUBJECT: Intelligence Contingency Funds, 500th Military Intelligence Brigade, Special Report: IAIR-08-2006

On 7 July 2006, Sharon Watanabe notified Steven Breyfogle that Gabriel Martinez had informed her that he had an outstanding Intelligence Contingency Fund advance of $900.00 and wanted to return the advance.

I noted that the Cash Advances sub ledger increased $38,378.05, from $40,755.19, on 31 March 2004, to $79,133.24, on 11 May 2004, which was the date of the scheduled inspection by the U.S. Army Intelligence and Security Command's Intelligence Contingency Fund Class B agent. The only transactions during April 2004, the month prior to the scheduled inspection were six advances. I determined that these DD Forms 1081 (post references 04-115 through 04-123 listed above) were either fabricated or erroneously posted by John Taylor to hide the fact that John Taylor did not have the cash on hand or in the bank from the inspector.

5. Conclusion. I found that the cash used to support Intelligence Contingency Fund operations was not accounted for properly. John W. Taylor, Intelligence Contingency Fund Class A agent, 500th Military Intelligence Brigade, could not account for $106,226.56 of his advance from Steven F. Breyfogle, Intelligence Contingency Fund Class B agent, U.S. Army Intelligence and Security Command. I found that the John Taylor had not processed cash that was returned to him by agents, fabricated DD Forms 1081, and destroyed Intelligence Contingency Fund documents and records to hide the fact that cash was missing from his accountability. I conclude that John Taylor destroyed documents in claimant records and all copies of his DA Forms 2362-R to impede an unannounced management control review and subsequent Class B agent inspection, to potentially gain more time to prepare his records for inspection and hide a $106,226.56 loss of funds.

6. Discussion of Results. I discussed these results with members of the investigation task force during the audit. This report is not subject to the official command-reply process required by AR 36-5. Questions pertaining to my review should be addressed to me at (703) 706-1666, or dave.elliott@us.army.mil.

DAVID M. ELLIOTT
Chief, Internal Review Office
U.S. Army Intelligence and Security Command